Rivera, J.
(dissenting). Defendant was not convicted of a sex offense, but because he was found guilty of first-degree unlawful imprisonment of his codefendant’s eight-year-old child, defendant was statutorily classified as a sex offender, and thus subject to the Sex Offender Registration Act (SORA) (Correction Law § 168-a [1], [2] [a] [i]). In accordance with SORA, County Court assigned defendant what it considered an appropriate risk level, which, in turn, determined how much of defendant’s personal information would be made public and the duration of his registration after his release from prison. However, County Court committed a fundamental error when *344 it applied the clear and convincing evidence standard in determining whether a downward departure from the assigned level was warranted in defendant’s case. The proper legal standard, and one consistent with S ORA’s legislative intent “to carefully guard a defendant’s liberty interest,” is the less onerous preponderance of the evidence standard (People v Gillotti, 23 NY3d 841, 864 [2014]).
Since the record before us fails to establish that County Court properly determined the existence and weight to be afforded defendant’s mitigating factors, the matter should be reversed and remitted for reconsideration. I therefore dissent from the majority’s decision to let stand a judicial determination based on a standard rejected by this Court, without proper consideration of the merits of defendant’s arguments, and which imposes on defendant a lifetime registration requirement with its attendant adverse consequences.
The scope and duration of SORA registration is determined by a court after consideration of recommendations from the People and the Board of Examiners of Sex Offenders (Board). Under SORA, the assigned notification level depends “upon the degree of the risk of re-offense by the sex offender” (Correction Law § 168-1 [6]). The Board makes its “risk level” assessment based on a numerical score derived from an aggregation of points assigned to various factors identified in a risk assessment instrument (RAI), created and utilized by the Board (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 3 [2006]). According to the SORA Risk Assessment Guidelines and Commentary (Guidelines) promulgated by the Board, a total score of 70 points or less results in a level one, low risk designation; over 70 but less than 110 points is assigned a level two, moderate risk designation; and 110 or more points results in a level three, high risk designation {id. at 1, 3).
The Guidelines also impose four automatic overrides resulting in a presumptive risk level three, regardless of the RAI point score {id. at 3-4). However, the overrides are not mandatory, and a court may depart from the override when warranted {id. at 4 [“The risk level calculated from aggregating the risk factors and from applying the overrides is ‘presumptive’ because the Board or court may depart from it if special circumstances warrant”]; see also People v Pettigrew, 14 NY3d 406, 409 [2010] [“The risk level suggested by the RAI, however, is merely presumptive, and the assigning of a risk level is *345 within the sound discretion of the SORA court”]; People v Mingo, 12 NY3d 563, 568 n 2 [2009]). A departure from the presumptive risk level
“is premised on a recognition that an objective instrument, no matter how well designed, will not fully capture the nuances of every case. Not to allow for departures would, therefore, deprive the Board or a court of the ability to exercise sound judgment and to apply its expertise to the offender” (Guidelines at 4).
A court may depart if it concludes “there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines” (id.; Gil-lotti, 23 NY3d at 861).
This Court held in People v Gillotti that a defendant must establish by a preponderance of the evidence the existence of mitigating circumstances supporting a downward departure from the presumptive risk level (23 NY3d at 861). If such circumstances exist, “the court must exercise its discretion by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant’s dangerousness and risk of sexual recidivism” (id.).
As relevant here, the Board’s RAI assigned defendant 55 points and the People recommended additional points bringing the score to 70. Both scores presumptively placed defendant at level one. However, the Board and the People recommended that defendant be designated a level three risk based on a presumptive override for having inflicted serious physical injury to the child victim of his underlying crime. The People argued that a level three designation was appropriate given concerns for community safety because of defendant’s indifference to the life of a child. Both relied on record evidence that defendant and codefendant, his friend and the child’s mother, tied up and subjected the child, while naked, to physical abuse over the course of five days. Defendant beat the child with a belt and a plastic bat. The child was subsequently treated for a collapsed lung, lacerated liver and intestines, and pooled blood in the abdomen. County Court concluded that the People established by clear and convincing evidence facts in support of the presumptive override, and that a downward departure was not warranted by the evidence. The Fourth Department sum *346 marily affirmed for reasons stated in the decision by County Court (125 AD3d 1331 [4th Dept 2015]).
Based on the level three designation, among other requirements, defendant must register with the Division of Criminal Justice Services and his name, any aliases, date of birth, race, sex, height, weight, eye color, home address, driver’s license number, a description of his offense, date of conviction, sentence, and a photograph, updated annually, will be published online for the rest of defendant’s life (Correction Law §§ 168-b [1] [a], [b], [c]; 168-h [2]). Defendant must further appear before the local law enforcement agency with jurisdiction every 90 days to verify his address (Correction Law § 168-h [3]).
At the SORA hearing and on appeal, defendant has consistently argued that his level three designation based on the presumptive override is unwarranted because his underlying conviction does not involve a sex crime. Defendant contends that a level one designation is appropriate. Defendant’s argument is supported, in part, by the case summary prepared by the Board, in which it concluded that defendant had no prior criminal history and the underlying crime “was not sexually driven.”
These circumstances should have been considered as possible mitigating factors supporting a departure from the presumptive level three override in accordance with this Court’s reasoning in People v Knox and its companion case, People v Cintron (12 NY3d 60 [2009]). In Knox, this Court considered a constitutional challenge to SORA by persons, like defendant, who were designated as “sex offenders” for SORA registration purposes even though their underlying crimes did not involve sexual acts or motives. Applying the most deferential constitutional test, the Court determined that the state legislature had a rational basis for concluding that in the large majority of cases involving kidnapping or unlawful imprisonment of children by nonparents, the children are either sexually assaulted or in danger of sexual assault {id. at 68-69). Therefore, the legislature could rationally provide that, “as a general rule, people guilty of such crimes should be classified as ‘sex offenders’ ” {id. at 69). However, the Court recognized that as applied to the minority of defendants whose cases do not involve “a sexual assault [or] any discernible risk of one,” even if constitutional, “the term is unmerited” {id.).
*347 In Cintron, the Court further considered whether a nonpar-ent defendant classified as a sex offender based on his conviction for unlawful imprisonment of two child victims could be lawfully designated a risk level three (id. at 70). Defendant Cintron asserted that the courts abused their discretion in failing to depart from the Guideline level because his underlying crime did not involve sex (id.). The Court rejected this argument, not because this factor was irrevelant, but because the defendant’s history included conduct that justified the sex offender risk level. The Court concluded that given the defendant’s “long record of violent conduct, including sexual violence,” and a serious tier III sex offense committed during incarceration, the Court could not say that the lower courts abused their discretion in determining that Cintron was a high risk to “commit a sex crime in the future” (id.).
As the analyses in these cases illustrate, the fact that an offender’s criminal history does not include any sex crime or sexual violence is a relevant factor in assessing whether classification as a sex offender merits a level three risk designation.[1] However, here, County Court failed to apply the proper standard in determining whether a downward departure from the presumptive level three designation was warranted based on defendant’s proposed mitigating factors. The court referenced only the clear and convincing standard in analyzing defendant’s risk level, made no distinction between the People’s burden and the proof necessary to justify a downward departure from the presumptive override, and failed to discuss how, if at all, it weighed defendant’s apparent absence of a criminal history. Thus, there is no support for the majority’s assumption that County Court agreed with defendant that mitigating factors existed, and then, based on the totality of the circumstances, found those factors insufficient to warrant a departure (majority op at 343 n 3). In fact, County Court made no mention of defendant’s argument that because the underlying crime *348 was not a sex crime he should be classified as a level one offender. County Court may have agreed that mitigating factors existed, or it may have rejected defendant’s argument. On this record, there is no way to know.
County Court’s silence is especially noteworthy given that the sexually violent history this Court singularly relied on in upholding the level three designation in Cintron is lacking from defendant’s case. Additionally, whereas Cintron’s level three risk assessment was based on his RAI score, defendant’s RAI placed him at a level one, low risk to reoffend, and his level three designation is a consequence of the application of the only guideline override that does not include an element involving a sexual act or motivation. These circumstances could have tipped in favor of a judicial determination that a level three designation is an “over- . . . assessment of the defendant’s dangerousness and risk of sexual recidivism” (Gillotti, 23 NY3d at 861, citing Knox, 12 NY3d at 70; People v Johnson, 11 NY3d 416, 421 [2008]), and that he did not pose “a high risk [to] commit a sex crime in the future” (Knox, 12 NY3d at 70).[2]
In light of the unsupportable assumptions necessary to uphold the decision below, I would remand and remit for the court to consider, under the preponderance of the evidence standard, whether the nature of defendant’s crime and the absence of a history of sexual violence are mitigating factors within the meaning of SORA, the Guidelines, and this Court’s precedent warranting a departure from the level three presumptive override. I cannot agree with the majority that there was no error below, and therefore, I dissent.
Judges Pigott, Abdus-Salaam, Stein, Fahey and Garcia concur; Judge Rivera dissents in an opinion.
Order affirmed, without costs.

. The majority’s statement that defendant’s RAI already accounts for the fact that his underlying crime does not involve sex is a distraction from the issue on appeal (majority op at 342). The Guidelines are explicit that the inquiry is whether “there exists an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines” (Guidelines at 4 [emphasis added]; Gillotti, 23 NY3d at 861). Therefore, even where the factor in question is explicitly considered in the calculation of an offender’s RAI score, if the court concludes it is “not adequately taken into account,” a court may consider it further in determining whether to depart.

. While I might agree with the majority that we can presume the Appellate Division correctly applied the law because it rendered its opinion after this Court decided Gillotti, that presumption is at odds with the Appellate Division’s summary opinion here. The Appellate Division affirmed “for reasons stated” by County Court (125 AD3d at 1331), and without at least a citation to Gillotti there is no reason to presume that the Court applied the proper standard. In any event, the Appellate Division opinion sheds no light on how defendant’s mitigation factors were considered below.